UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JUAN CARLOS RUIZ,

        Petitioner,               Case No. 2:16-cv-255

v.                                 Honorable Paul L. Maloney

KATHY OLSON,

        Respondent.
_____ _____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face).

        The Court conducted such a review four years ago and, because two of the issues raised required review of the state court record, directed Respondent to answer the petition. On July 6, 2017, in lieu of answering the merits of the petition and providing the state court record, Respondent moved to dismiss the petition because Petitioner had failed to exhaust his state court remedies with regard to two of the four habeas issues. Magistrate Judge Timothy P. Greeley authored a report and recommendation recommending that the Court entertain a motion to stay these proceedings and hold them in abeyance pending Petitioner's timely exhaustion of his state

court remedies.  The Court adopted that recommendation and then granted Petitioner's subsequent motion to stay these proceedings.

Petitioner filed a motion for relief from judgment in the trial court.  The trial court promptly denied that petition, and Petitioner filed a document in the trial court expressing his intention to file an application for leave to appeal in the Michigan Court of Appeals.  (Pet'r's May 9, 2018, Correspondence, ECF No. 14, PageID.137.)  Petitioner never followed through on that intention or, if he attempted to do so, his attempt was not successful because the Michigan appellate courts have no record of further action on the matter.  *See* https://courts.michigan.gov/opinions_orders/case_search/pages/default.aspx?SearchType=2&PartyName=ruiz+juan&CourtType_PartyName=3&PageIndex=0&PartyOpenOnly=0 (visited Dec. 18, 2020).

Petitioner apparently forgot that the trial court had denied his motion for relief from judgment because he recently contacted the trial court asking to withdraw the motion.  (Pet'r's Mot., ECF No. 15, PageID.148.)  The trial court reminded Petitioner that the motion had been denied years before.  (Kent Cnty. Cir. Ct. Correspondence, ECF No. 15-1, PageID.153.)  Despite the fact that Petitioner informed this Court about the denial of the motion in May of 2018, he now claims that he never received notice of the trial court's action.  (Pet'r's Mot., ECF No.15, PageID.148.)   Petitioner asks the Court to lift the stay and proceed with his petition. (ECF No. 15.)

The Court will grant Petitioner's motion.  Moreover, in light of Petitioner's intervening procedural default, additional items from the state court record are not necessary to resolve the petition.  Instead, it plainly appears from the face of the petition and attachments that Petitioner is not entitled to relief.  Thus, in light of the changed circumstances, after undertaking

the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

### I.     Factual allegations

Petitioner Juan Carlos Ruiz is incarcerated with the Michigan Department of Corrections at the Charles Egeler Reception & Guidance Center (RGC) in Jackson, Jackson County, Michigan.  On July 30, 2012, after a jury trial in the Kent County Circuit Court that spanned four days, Petitioner was convicted of perjury, in violation of Mich. Comp. Laws § 767A.9; using a computer to commit a crime, in violation of Mich. Comp. Laws § 752.797; burning insured property, in violation of Mich. Comp. Laws §750.75; and burning and conspiracy to burn a dwelling place, in violation of Mich. Comp. Laws § 750.72.[1]  On September 4, 2012, the court sentenced Petitioner to prison terms of 5 to 15 years for perjury, 5 to 20 years for the arson crimes, and 5 to 10 years for burning an insured property; all to be served consecutively to a sentence of 5 to 20 years for using a computer to commit a crime.

On November 15, 2016, Petitioner filed his habeas corpus petition raising four grounds for relief, as follows:

> I.    Petitioner seeks standing to challenge search that violates co-defendant's constitutional rights.
>
> II.   Screen shots of admitted evidence w[ere] taken prior to execution of warrant.
>
> III.  Michigan Court of Appeals decided that a defendant does not have [an] "absolute right to remain silent."
>
> IV.   Prosecution did not identify 10+ victims needed to score 25 points for OV 9.

---

[1] At the end of 2012, Michigan amended the penal code chapter covering arson and burning crimes.  The crimes which Petitioner committed would now be prosecuted under the new statutory sections as first-degree arson, conspiracy to commit first-degree arson, and fourth-degree arson.

3

(Pet., ECF No. 1, PageID.4-8.)

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

> Defendant's convictions arose out of a fire that burned a house he owned. The parties stipulated that the cause of the fire was arson. At trial, Lee Pegues and Dustin Mieras testified that defendant had planned the arson and that they had participated in the arson at defendant's direction while defendant was out of the country. In addition, a witness to the fire testified that she had seen Mieras at the fire scene; prior to trial she had identified the individual in a photographic array. Other witnesses testified at trial about the nature of the fire, the firefighting effort, and the communications among defendant and the two individuals. Defendant did not testify at trial, but his testimony from an investigative subpoena hearing was read into the record. In that hearing, defendant had denied any connection with the fire and denied any knowledge of who might have been involved with the fire.

(Mich. Ct. App. Op., ECF No. 1-1, PageID.25.)[2]  After hearing the evidence, argument, and instructions, the jurors deliberated for less than two hours before reaching their verdict. (Pet'r's Appl. for Leave to Appeal, ECF No. 1-1, PageID.153.)

Petitioner, with the assistance of counsel, appealed his convictions and sentence, raising several issues, including the issues identified as habeas issues III and IV, above. By unpublished opinion issued May 15, 2014, the Michigan Court of Appeals affirmed the trial court. (Mich. Ct. App. Op., ECF No. 1-1, PageID.25-33.)

Petitioner, again with the assistance of counsel, filed an application for leave to appeal in the Michigan Supreme Court. By order entered October 28, 2015, the supreme court, in lieu of granting leave to appeal, reversed that part of the court of appeals' decision regarding the use of judge-found facts in applying Michigan's sentencing guidelines, and remanded to the trial court to determine whether the trial court would have imposed the same sentence if the sentencing

---

[2] Petitioner provides a much more detailed summary of the evidence admitted at trial in the Michigan Supreme Court Application for Leave to Appeal attached to his petition. (ECF No. 1-1, PageID.45-53.)  Petitioner's summary, however, does not call into question the facts as stated by the Michigan Court of Appeals.

4

guidelines were discretionary rather than mandatory. *People v. Ruiz*, 870 N.W.2d 330 (Mich. 2015). As to all other issues, however, the supreme court denied leave to appeal.

The docket of the Kent County Circuit Court reveals that the trial court, by opinion and order entered January 16, 2016, determined that it would have imposed the same sentence if the sentencing guidelines were discretionary, rather than mandatory, and thereby affirmed Petitioner's sentence as initially imposed. Petitioner did not appeal that determination. (May 9, 2016, Correspondence from State Appellate Defender Office, ECF No. 1-1, PageID.36; Request for Stay, ECF No. 10.) Instead, he filed this petition, which has proceeded in this Court as described in the introduction above.

**II.     AEDPA standard**

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652,

655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013); *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is

6

presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. Procedural default

As Petitioner acknowledged in his request to stay this action, he failed to exhaust his first two habeas issues in the state courts prior to filing this petition. Before this Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995), and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365-66; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

Petitioner returned to the state trial court to exhaust his remedies there. Petitioner filed a motion for relief from judgment and the trial court denied relief. Petitioner never presented the issues to the Michigan Court of Appeals or the Michigan Supreme Court. Therefore, he has

7

failed to exhaust his state court remedies. At this point, however, he can no longer file a timely application for leave to appeal in either court. Mich. Ct. R. 7.205(G), 7.305(C). Failure to exhaust state court remedies is only a problem if there a state court remedy remains available for petitioner to pursue. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). If no further state remedy is available to Petitioner, his failure to exhaust does not bar relief, but the claim is procedurally defaulted and the federal court must determine whether cause and prejudice exists to excuse the failure to present the claim in state court. *Id.*

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster*, 324 F.3d at 436-37; *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52. The miscarriage-of-justice exception only

8

can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Petitioner acknowledges that he no longer has a remedy available in the state court. It is for that reason that he asks the Court to lift the stay and proceed with his habeas issues despite the lack of exhaustion. Petitioner claims that relief is appropriate because the state court never gave him notice of the denial of Petitioner's motion for relief from judgment. That claim is very obviously false. Petitioner informed this Court more than two-and-one-half years ago that the trial court had denied his motion for relief from judgment and that he intended to appeal to the court of appeals. (May 9, 2018, Correspondence, ECF No. 14, PageID.137.)

But the state court has not yet, to the Court's knowledge, expressly enforced the rule and rejected Petitioner's untimely application for leave to appeal. Only Petitioner knows. The court of appeals might simply reject such an application without filing it where it is so obviously untimely. That action would not be apparent on the appellate court's public docket.

At least one other court considering whether to apply the procedural default doctrine in this context has concluded that it should be applied:

> Following the state trial court's denial of Hatfield's motion for relief from judgment, Hatfield had only six months to appeal. *See* Mich. Ct. R. 6.509(A), 7.205(G)(3). As the state trial court denied Hatfield's motion in 2015, six months has long since passed and, as noted, Hatfield has not appealed. Moreover, Hatfield cannot file a second motion for relief from judgment . . . absent a showing of new evidence not discovered prior to his first motion or a retroactive change of law since his first such motion. *See* Mich. Ct. R. 6.502(G). And there is no reason to think that Hatfield could make any such showing . . . . Thus, it appears that Hatfield cannot now exhaust his claim . . . . It follows that the claim is procedurally defaulted. *See Bousley v. United States*, 523 U.S. 614, 622 (1998); *Williams v.*

9

> *Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (describing two types of procedural default).
>
> Although federal courts should think twice about *sua sponte* dismissing a claim as defaulted, *see Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), this Court sees no way around the default. To excuse the default, Hatfield would have to show "cause for the default and prejudice resulting therefrom, or that failing to review the claim would result in a fundamental miscarriage of justice." *Williams v. Anderson*, 460 F.3d 789, 805-06 (6th Cir. 2006).
>
> Hatfield cannot make this showing . . . .
>
> Nor can Hatfield demonstrate that failing to review his *Crawford* claim would result in a fundamental miscarriage of justice. That exception to a procedural default "requires a prisoner to present new reliable evidence showing that he is actually innocent." *Dufresne v. Palmer*, 876 F.3d 248, 256 (6th Cir. 2017). But Hatfield has not presented any "new reliable evidence . . . that was not presented at trial." *McCray v. Vasbinder*, 499 F.3d 568, 571 (6th Cir. 2007) (internal quotation marks and alteration omitted); *see also Harvey v. Jones*, 179 Fed.Appx. 294, 299 (6th Cir. 2006). . . .
>
> In short, this Court cannot reach the merits of Hatfield's *Crawford* claim because it is procedurally defaulted.

*Hatfield v. McKee*, No. 15-10101, 2018 WL 1254947, at *5-6 (E.D. Mich. Mar. 12, 2018). The Court finds that reasoning persuasive.[3]

Petitioner must show cause for his failure to timely file his application for leave to appeal. He cannot. His submissions to this Court show he was aware of the need to file his appeal. He simply did not do so. Alternatively, Petitioner must support a claim of "actual innocence" with new evidence. He has not. Accordingly, the Court concludes that Petitioner's habeas issues I and II are procedurally defaulted.

---

[3] Moreover, if Petitioner must file his late application before his claim is subject to a procedural default, then it remains unexhausted with a remedy to pursue, so the lack of exhaustion would preclude relief. At this stage, however, the Court would not permit him a stay to pursue that relief because *Rhines v. Weber*, 544 U.S. 269, 277 (2005), counsels against granting a stay in the absence of good cause for failing to exhaust or in the presence of dilatory litigation tactics.

**IV.     An absolute right to remain silent in response to an investigative subpoena**

The Fifth Amendment of the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that, to protect an individual's Fifth Amendment privilege against self-incrimination, when an individual is in custody, law enforcement officials must warn the suspect before his interrogation begins of his right to remain silent, that any statement may be used against him, and that he has the right to retained or appointed counsel. *Id.* at 478-79; *see also Dickerson v. United States*, 530 U.S. 428, 435 (2000); *Stansbury v. California*, 511 U.S. 318, 322 (1994).

The Michigan Court of Appeals recognized that Petitioner's *Miranda*-based arguments were misplaced:

> On appeal, defendant first argues that the trial court erred by allowing the prosecution to read his investigative subpoena testimony into evidence. Specifically, defendant contends that the testimony was inadmissible because the prosecution failed to advise him that he had a right to counsel during the investigative hearing. Defendant did not object to the admission of his subpoena testimony at trial; accordingly, we review this unpreserved issue for plain error. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). To warrant reversal, defendant must demonstrate that admission of the testimony was erroneous, and that the error "seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*. at 774.
>
> The admission of the investigative subpoena testimony into evidence does not warrant reversal in this case. The transcript of the investigative hearing demonstrates that defendant agreed to appear at a time that fit within his plans for travel, and that he agreed that the prosecution could serve the investigative subpoena at the hearing. The transcript further demonstrates that the prosecution advised defendant on the record that there was an investigation into a possible arson and advised him that he had "a right to refuse to answer any question if a truthful answer to a question would tend to incriminate [him] personally." In addition, the prosecution advised defendant: "Anything you do say may be used against you in a subsequent legal proceeding. If you have a lawyer, you certainly are permitted a reasonable opportunity to talk to a lawyer if you so desire."
>
> Defendant now alleges that these warnings did not adequately advise him of his constitutional rights. We disagree, for two reasons. First, the circumstances

> surrounding defendant's investigative subpoena hearing did not implicate the constitutional concerns described in *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966) (acknowledging that "the compulsion to speak in the isolated setting of the police station may well be greater than in courts or other official investigations, where there are often impartial observers to guard against intimidation or trickery."). "In the paradigmatic *Miranda* situation—a person is arrested in his home or on the street and whisked to a police station for questioning—detention represents a sharp and ominous change, and the shock may give rise to coercive pressures." *Howes v Fields*, ___ US ___; 132 S Ct 1181, 1190; 182 L Ed 2d 17 (2012). In this case, defendant agreed to appear at a time that was convenient for him, and he acknowledged that he would be traveling outside of Michigan after the hearing.
>
> Second, the advice of rights given to defendant did not amount to plain error requiring exclusion of the testimony. The advice correctly informed defendant of his rights during questioning pursuant to the investigative subpoena. That is, he did not have an absolute right to remain silent; rather, he had an obligation to answer truthfully, subject only to the condition that he could not be compelled to incriminate himself. See MCL 767A.5(1), (5). Similarly, although the prosecution's advice concerning counsel was not a talismanic incantation of the *Miranda* rights, the advice "touched all the required bases" in a manner that adequately informed defendant of his rights. See *People v Hoffman*, 205 Mich App 1, 14; 518 NW2d 817 (1994).

(Mich. Ct. App. Op., ECF No. 1-1, PageID.25-26.)

Here, Petitioner was interviewed pursuant to an investigative subpoena. An investigative subpoena is a Michigan statutory creation, not unlike a grand jury subpoena in the federal system. *See* Mich. Comp. Laws § 767A.1 *et seq*. Under the statute, the witness is permitted to have counsel present and the prosecutor is required to inform the witness of his constitutional right regarding compulsory self-incrimination. Mich. Comp. Laws § 767A.5.

*Miranda* expands the Fifth Amendment right against self-incrimination into a right to silence in the coercive environment of custody. Outside of that environment, however, the constitutional right at issue is only the right against being compelled to offer testimony that incriminates oneself. Mr. Ruiz admits he was advised of that right. (Pet'r's Appl. for Leave to Appeal, ECF No. 1-1, PageID.52) ("Mr. Ruiz was told that he could refuse to answer questions

12

that would incriminate himself, but he could not protect anyone else."). That leaves the question whether Petitioner was "in custody," a precondition to the *Miranda* warning requirements.

The test for determining whether an individual is "in custody" for purposes of *Miranda* is objective: whether a reasonable person in the defendant's position, knowing the facts as the defendant knew them, would have felt that he was under arrest or was "otherwise deprived of his freedom in any significant way." *Miranda*, 384 at 477. The determination does not turn on the subjective views of either the interrogating officer or the person being questioned. *Stansbury*, 511 U.S. at 323; *Mason v. Mitchell*, 320 F.3d 604, 631 (6th Cir. 2003). "In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but 'the ultimate inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest.'" *Id*. at 322 (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam).

The environment Petitioner faced does not seem to rise to the level of custody. Petitioner admits that he "voluntarily appeared at the request of the police[.]" (Pet'r's Appl. for Leave to Appeal, ECF No. 1-1, PageID.57.) Moreover, Petitioner does not contest the factual determinations that "[he] agreed to appear at a time that was convenient for him, and he acknowledged that he would be traveling outside of Michigan after the hearing." (Mich. Ct. App. Op., ECF No. 1-1, PageID.26.) Those are not the expectations of a person who believes he or she is under arrest.

The Michigan federal courts have concluded that appearing for an investigative subpoena is not "custody." *Sparkman v. McKee*, No. 1:12-cv-1007, 2016 WL 4486966, at *10 (W.D. Mich. Aug. 26, 2016) ("As the Sixth Circuit noted in *United States v. Radabaugh*, No. 86-3459, 1988 WL 12801 (6th Cir. Feb 22, 1988), '*Miranda* . . . applies to custodial interrogation

13

. . . [;] the argument that mere service of a subpoena and initiation of questioning by a government agent constitute custodial interrogation is untenable.'") (footnote omitted); *Fieger v. Cox*, No. 05-CV-73891-DT, 2006 WL 3543745, at *10 ("The Sixth Amendment right to counsel attaches only upon the initiation of judicial proceedings against an individual. . . . Fisher also had no Fifth Amendment right to counsel under these facts because such rights first arise when an individual is subject to custodial interrogation. . . . At best, Fisher had a statutory right to counsel under the Investigative Subpoena Act . . . .") (citations omitted). As this Court noted in *Sparkman*, the Supreme Court has rejected the argument that a witness is in custody—and that the *Miranda* warnings are required—in parallel contexts. *See Minnesota v. Murphy*, 465 U.S. 420, 431-32 (1984) (court held that probation officer's power to compel probationer's attendance and truthful answers, officer's conscious seeking of incriminating evidence, probationer's inability to consult with counsel before interview, and absence of observers to guard against abuse did not render interview custodial); *United States v. Mandujano*, 425 U.S. 564, 580-81 (1976) (court held that extension of "the concepts of *Miranda*" to a grand jury witness under subpoena was not warranted).

For all of these reasons, the court of appeals' determination that Petitioner was not "in custody" is factually reasonable and neither contrary to, nor an unreasonable application of, clearly established federal law. That determination eviscerates Petitioner's *Miranda* claim.

Petitioner's arguments also suggest that the prosecutor's advice of rights fell short of that which is required under Michigan's investigative subpoena statute. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory

14

Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases).  The federal courts have no power to intervene on the basis of a perceived error of state law.  *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions.  *Bradshaw*, 546 U.S. at 76 (2005); *Estelle*, 502 U.S. at 68.  The decision of the state courts on a state-law issue is binding on a federal court.  *See Johnson v. United States*, 559 U.S. 133, 138 (2010); *Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  The Sixth Circuit has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76). *See also Thomas v. Stephenson*, 898 F.3d 693, 700 n.1 (6th Cir. 2018) (same).  Accordingly, Petitioner's claim that the prosecutor violated Petitioner's rights under the state statute is not cognizable on habeas review.

### V.    Prosecution did not identify 10+ victims as required to score 25 points under Michigan Sentencing Guidelines Offense Variable 9

Petitioner notes that the trial court scored 25 points on Offense Variable 9 because 10 or more victims were placed in danger of physical injury or death.  Petitioner claims the trial judge arrived at that score because he counted the four firefighters, five neighbors in nearby houses, and three "civilian responders."  Petitioner objects because the "'3 civilian responders' were never identified."  (Pet., ECF No. 1, PageID.8.)  The court of appeals had no problem finding the 12 victims:

> We conclude that the preponderance of the evidence supports the trial court's scoring of OVs 9 and 13.  Under OV 9, the trial court must score 25 points when "[t]here were 10 or more victims who were placed in danger of physical injury or death, or 20 or more victims who were placed in danger of property loss."  MCL 777.39(1)(b).  The sentencing guidelines further instruct that the court should "count each person who was placed in danger of physical injury or loss of life or

> property as a victim." MCL 777.39(2)(a).  Of particular relevance to the present facts, emergency personnel who are placed at risk of injury or death, such as firefighters responding to an arson fire, may qualify as victims for purposes of OV 9.  *People v Fawaz*, 299 Mich App 55, 63; 829 NW2d 259 (2012).
>
> The record in this case indicates that the fire endangered at least twelve individuals: three civilian responders, four firefighters, and five neighbors in a nearby house. All of these individuals qualified as "victims" for purposes of OV 9.  Although there may have been additional firefighters who were endangered and additional neighbors who were either personally endangered or at risk of property loss, no proof of additional victims was required.  The evidence was sufficient to assess 25 points against defendant under OV 9.

(Mich. Ct. App. Op., ECF No. 1-1, PageID.31-32.)  Although the court of appeals does not name the "3 civilian responders," a review of the trial transcript reveals that they are Ms. Barbara Snell and Ms. Marion—who came toward the fire to rouse the people in the neighboring homes—and the Consumers Energy "guy" that Ms. Snell recruited to call 911—he pulled in close to the burning home to make the call.  *People v. Ruiz*, No. 12-00571-FH (Kent Cnty. Cir. Ct.) (July 26, 2012, Trial Tr., 50-52, 64-65).

Claims concerning the improper scoring of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings.  *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief);  *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law).  There is no constitutional right to individualized sentencing. *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *see also Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978).  Moreover, a criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations."  *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich.

16

2004); *accord Austin*, 213 F.3d at 300; *Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987).

Although state law errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'" *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003) (quoting *Pulley*, 465 U.S. at 50 ); *see also Doyle*, 347 F. Supp. 2d at 485 (a habeas court "will not set aside, on allegations of unfairness or an abuse of discretion, terms of a sentence that is within state statutory limits unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking.") (citation omitted). A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980)); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 447.

Petitioner has utterly failed to show that the information regarding the number of victims that was before the sentencing court was materially false. Accordingly, he cannot demonstrate that the court of appeals' rejection of his sentence scoring claim was contrary to, or an unreasonable application of, clearly established federal law and he is not entitled to habeas relief.

17

## VI. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated:   January 26, 2021                        /s/ Paul L. Maloney
                                                        Paul L. Maloney
                                                        United States District Judge